McKinney, J.,
delivered the opinion of the court.
In 1834, a charter was granted to the defendant, by the General Assemby authorizing the construction of a railroad from Knoxville, “through the Hiwassee district, to a point on the southern boundary of Tennessee.” The charter confers on the company the right to take, without the consent of the owners, so much land for the bed of the road and other necessary purposes — not exceeding two hundred feet in width — as the Board of Directors may deem necessary. The charter further provides, that when it shall become necessary to subject the land of individuals for the use of the road, if the right of soil cannot be had by gift or purchase from the owner of the land, and the parties cannot agree as to the value of the land taken, either party may apply to the circuit court of the county where the land lies, for the appointment of five commissioners to assess the value, &c.
The route of said road, as contemplated by the charter, to a considerable extent, lay through a section of country (now known a3 the Ocoee district) to which the Indian title had been then recently extinguished by treaty, and which, at the date of the charter, was wholly unappropriated, and so remained until 1837, when a law was passed establishing an entry-taker’s office, which was opened in ' November, 1838. The 17th section of the charter provides: “That should said railroad pass over vacant and unappropriated lands, said compauy shall have exclusive right of entering the land over which *97 said road may "be laid out, not exceeding two hundred feet in breadth, until the first day of January, 1839. And the entry-taker of the district or county through which said road may be laid out, shall not receive any entry within that period, for the benefit of any other person or persons than said company, under the penalty of five thousand dollars, to be recovered by action of debt, in any court having cognizance thereof, at the suit of said corporation: Provided, said company shall notify the entry-taker of the different counties, through which the said road may pass, of the route thereof.”
The company proceeded, under said charter, and caused the route of the road to be surveyed and located, and also caused the same to be laid down upon the books of the entry-taker of the district; and in part had graded the road long before the date of the entry, under which the plaintiff claims; to be hereafter mentioned.
The company declined to enter the vacant land over which this road had been laid out; and on the 6th of December, 1841, after the price had been reduced, by operation of the law graduating the price of said land, the persons under whom the plaintiff claims, as general enteiers, made an entry of 80 acres of land through which the. road had long previously been located: on the 12th of January, 1842, a grant issued to them for the same; and on the 6th of January, 1851, they sold and conveyed said land to the plaintiff.
' TJpon this state of facts, the plaintiff at the January Term, 1841, of the circuit court of Bradley— before he had acquired any legal title — presented his petition for the appointment of commissioners, to assess the value of so- much of the . land covered by said entry and grant of *98 eighty acres, as had been taken by the company for the use of said road.
The court dismissed the petition and we think properly. We are aware of no principle upon which the claim set up by the plaintiff can be maintained.
It is argued, that a gift of the right of soil, in the vacant land appropriated by the company to the use of the road, was not contemplated by the legislature; that it was intended that the company should enter and pay for the land taken, as individual enterers wore required to do, and that failing to enter within the time limited, the land was thrown into market, and that as by law, the general enterer was not permitted to take merely the fractions on either side of the road, but was compelled to include in his entry the land occupied by the bed of the road, it follows, that the fee simple in the land appropriated by the company passed to the enterer.; that he succeeds to all the rights of the grantor; and, Tyy relation, occupies the attitude of owner -in fee at the time the land was taken hy the company; and, therefore, he is brought within the provisions of § 15th and 16th of the charter, upon which his petition is based. This reasoning, however plausible, is not sound. It is to be observed, that the right of way or easement, is seperable and distinct from the right of soil. The one may be granted without the other, and may exist in different persons at the same time. A charter granted by legislative act, to a private individual or company, is a contract;*it is a grant; and, when accepted and acted on, is as obligatory, as inviolable, and as irrevocable, as the contract or grant of an individual, and subject to the same rules of construction. The charter, it is true, does *99 not assume to vest tlie company with any. interest in the soil, in the vacant and unappropriated land through which the road was to be laid out; it simply secures to the company for a limited time, the right ro acquire the fee in preference to all others. But, although it entitles 'the company to acquire the absolute legal title to the land appropriated, it does not imperatively require that this shall be done. The right of acquisition of the fee, is not in the nature of a condition, either precedent or subsequent;. it is rather an election given to the company, which they may exercise .or not, and the failure of the company to enter the land can have ,no influence upon other rights conferred absolutely by the charter, altogether independent of the right of soil.
The charter is to have such construction and effect — with a view to carry out its contemplated object — as consistently with established rules of law, may be given to it.
It is clear that although the charter does not give the right of- soil, it nevertheless confers certain absolute powers, rights and privileges, upon the faith of which it was accepted.
It authorizes the board of directors to enter on the land,' and in express terms vests them “ with all the powers and rights necessary for the building, constructing, and keeping in repair a railroad from Knoxville, through the ITiwassee district, to a point on the southern boundary of Tennessee.” The title being in the State, there is no question as to the competency of the legislature to make such a grant to the company; and there is as little question, that such grant is not only operative to vest in the company the powers, rights, and privileges *100 conferred, but that, upon a well established principle, it amounts to an extinguishment of the right of the grantor, and implies a contract on the part of the legislature, that the rights and privileges so granted, shall be enjoyed by the grantee, and that the State shall not reassert them, lliis being so, the person who subsequently entered the land, appropriated to the use of the road, became invested with the ultimate fee simple interest,. subject to the right of way previously granted to the company and with nothing more, lie can have no other or higher right than that derived from his grantor, and we are at a loss to perceive how even the sovereign power of the State could have compelled the company, after the acceptance of the charter, and location and construction of the road, to have entered or paid for the land in question. But be this as it may, it is sufficient for the decision of this case, that the charter, in legal construction, is an absolute and unqualified grant of the right of way, founded upon the consideration of benefit to the public, and the enhanced value of the adjacent lands, and having been accepted and acted on, no such claim can be asserted as is set up by the plaintiff in this case. Without noticing other grounds relied upon by the defendant, we affirm the judgment.